ROLLER v. PAN MUTUAL ROYAL-
TIES et al.

No. 35068.   Oct. 28, 1952.

Rehearing Denied Dec. 9, 1952.

Application for Leave to File Second
Petition for Rehearing Denied
Jan. 10, 1953.

*251 P. 2d 1053.*

Gilliland, Ogden, Withington, Shirk &
Vaught, Oklahoma City, for plaintiff
in error.

Chas. L. Orr and Wayne W. Bayless,
Oklahoma City, and Hardin Ballard,
Purcell, for defendants in error.

O'NEAL, J.   The parties here appear
in the same relative position as in the
trial court. R. E. Roller will be referred
to as plaintiff, and the Pan Mutual
Royalties, as defendant, and certain in-
dividuals as interveners.

Under the amended petition plaintiff
alleged that he was the owner of two
separate tracts of land in Garvin coun-
ty, Oklahoma, and that in 1931 and
1932 he executed and delivered to the
Pan Mutual Royalties, a trust estate,
two separate mineral deeds conveying
an undivided interest in the oil, gas
and other minerals in and under said
tracts of land. That under the oral rep-
resentations of the defendant's agent,
defendant agreed to hold said property
in trust for the plaintiff and operate
the same for 20 per cent of the net
profits derived therefrom.   Plaintiff
states the conveyances were made
without any consideration passing to
him and alleges that the defendant
breached said trust by not accounting
for bonus money and rentals collected
thereunder.

Under a separate cause of action
plaintiff states that defendant claims
an interest in plaintiff's land under a
trust known as the Pan Mutual Royal-
ties, but that plaintiff was not a party
to said trust agreement, or had any
knowledge thereof, and is not bound
thereby. In the alternative, he pleads
that if the court found that he was
bound by the terms of the trust agree-
ment, that he is entitled to have the
same rescinded, canceled, and held
for naught insofar as it affects plain-
tiff's land. The prayer asks that the
mineral deeds executed by plaintiff to
the defendant be canceled, set aside
and held for naught and that his title
in the land be quieted in him.

The answer of Pan Mutual Royal-
ties admits it is a common-law trust
organized under the laws of the State
of Oklahoma, and that it is engaged in
the business of pooling and owning oil,

gas and mineral rights for the benefit of its shareholders; that the trust was created by an instrument in writing in May, 1931, and was recorded in the county clerk's offices of Oklahoma, Pittsburg and Garvin counties; that plaintiff, on August 28, 1931, in exchange for 600 shares in said trust executed his mineral deed conveying to defendant an undivided three-eighths interest in oil, gas and other minerals in plaintiff's land located in section 36, township 4 north, range 3 west, which mineral deed was recorded in the office of the county clerk of Garvin county.

On February 10, 1932, plaintiff, in exchange for 300 shares in said trust, executed his mineral deed conveying to defendant an undivided one-half interest in oil, gas and other minerals in plaintiff's land in section 33, township 4 north, range 2 west, which mineral deed was recorded in the office of the county clerk of Garvin county. Defendant denies that an agent of defendant had any authority to agree or that said agent did agree that defendant would hold said properties for the use and benefit of plaintiff for 20 per cent of the net profits derived therefrom, but alleges that the plaintiff made a written application for shares of stock in the defendant's trust and that in consideration of the issuing of stock to plaintiff he conveyed to defendant the mineral interest referred to under the trust agreement. Defendant alleges that under the terms of the trust some 300 persons and corporations conveyed mineral rights in their land to defendant for shares of beneficial interest under the trust; that defendant owns in excess of 40,000 full acres of mineral rights in lands in Oklahoma, Texas, Kansas, New Mexico, and Colorado, and that it is solvent and capable of performing its obligations under the trust agreement. Defendant states that the mineral deeds were executed by plaintiff more than fifteen years prior to the commencement of the present suit, and that plaintiff's action is barred by limitation and laches. Furthermore, that plaintiff has permitted, for more than fifteen years, the pooling of his acreage with other shareholders under the trust, and that said shareholders' rights are definitely established by changes in the increased value of their shares.

Six individuals and corporations, owners of 25,255 shares of the stock of the defendant's trust, appearing in their own behalf, and for other shareholders similarly situated, by leave of court, filed an intervening petition in which they adopted by reference the answer of the defendant herein. Interveners further allege that plaintiff at no time tendered back his shares as a basis of rescinding his contract and that plaintiff's properties or mineral rights at the time of the execution of his mineral deeds had little oil or gas value, but by reason of the discovery of oil on said land the same has become very valuable and that interveners have a beneficial interest therein; that plaintiff executed the conveyances with knowledge that his mineral interest would be pooled with owners of other mineral interest, and that plaintiff has, during a period of more than fifteen years, recognized the ownership rights of Pan Mutual Royalties, and has only sought a rescission of his contract after the discovery of oil upon his land.

The trial judge made findings of fact and conclusions of law and based thereupon entered a judgment in favor of the defendant and interveners. From the order denying plaintiff's motion for a new trial, plaintiff appeals.

Plaintiff here contends that the trial court should have decreed a resulting trust in plaintiff's favor and should have quieted his title in the land, free from the claims of the defendant and interveners. This contention is based upon the assertion that plaintiff never saw the purported pooling trust, but if he did see it, he could not understand it; therefore, the undisputed facts establish there was no meeting of the minds and no contract.

Much stress is placed upon plaintiff's evidence that he did not know the con-

tents of the pooling trust. The certificate of stock issued to him, however, contained a statement that it was subject to the written agreement and declaration of the trust which was made a part thereof and expressly assented to. Plaintiff testified that he did not remember whether he read the statement contained in his certifficate of stock. When plaintiff was questioned regarding these provisions of the certificates he testified:

"A. I don't know that I read it.

"Q. What was to keep you from reading it? A. I just didn't pay any attention to that; it did not make any difference, I don't think I read it, that is my recollection.

"Q. It didn't make any difference any way, you were not interested? A. I was a little, but not too much right then.

"Q. You would not undertake to tell the court whether you read it or not? A. No, I would not."

It is further asserted that an agent of the defendant represented to plaintiff that he was getting up a royalty pool for Pan Mutual Royalties, and that defendant would receive 20 per cent of the pool for organization work and expense of its operation; that defendant's agent further stated to plaintiff:

"If there is not any production on this (meaning plaintiff's land) within fifteen years, this will all revert back to you, in other words, at the expiration of fifteen years, it will be a live organization and going concern, and will be producing, and if it was not, I would get it back."

Several witnesses testified that at the solicitation of the defendant's agent, Smith, they executed perpetual mineral deeds to defendant in exchange for certificates in the pooling trust; that the agent represented to one purchaser of the certificate of stock that if the trust had not developed the land for oil within ten years from the date of the mineral deed, the deed would be returned to the grantor; another witness stated that the deed would revert in fifteen years. This testimony was admitted over the objection and exception of the defendant and interveners. As the purported statements were made by Smith, after plaintiff's transaction with defendant had been fully completed, this statement in no event induced or was a controlling influence in entering into the agreement evidenced by the written contract. Moreover, the undisputed evidence established the fact that plaintiff at no time advised the officers of the trust that Smith had made the representation imputed to him. Their testimony is to the effect that Smith's statement was neither authorized nor even brought to their attention.

Furthermore, the memory of the witnesses was not in accord on the matter, as disclosed by the following:

"Q. Now did he say everyone would get their land back unless their tract of land was producing, or did he say one producer, or one producing piece of land would hold the whole thing? A. If it was not producing in fifteen years is what he said.

"Q. This tract or the whole pool? A. I presume the whole pool."

Another witness' recollection is disclosed by the following question and answer:

"Q. Suppose they drilled on someone else's land and got oil, and you were to share in that, you understood that, now I want to know if you participated in the production from someone else's land, were you to get your land back, is what I am trying to get at. A. It has been so long, I don't remember about that."

It is plaintiff's contention that the evidence thus submitted must be taken as true, for the reason that defendant did not attempt to disprove the same by the evidence of defendant's agent, Smith. That, therefore, the proof so submitted was sufficient to sustain a judgment in plaintiff's favor.

Our decision must be based on credible testimony and undisputed evidence

if not credible will not support a finding of fact or a conclusion of law based thereon.

In Fisk v. Bullard, 205 Okla. 502, 239 P. 2d 424, we held:

"Undisputed credible testimony not inherently improbable is usually binding on a court or jury, but evidence is not regarded as undisputed if it is at variance with the facts and circumstances of the case or reasonable inferences to be drawn therefrom. A jury may accept circumstantial evidence on the one side, and reject positive testimony on the same point on the other side."

The record discloses that plaintiff, on August 28, 1931, executed a mineral deed conveying to the defendant an undivided three-eighths interest in the oil, gas and other minerals under land then owned by him in section 36, township 4 north, range 3 west, Garvin county, Oklahoma. On the 10th day of August, 1932, plaintiff executed a mineral deed conveying to defendant an undivided one-half interest in oil, gas and other minerals in land then owned by him in section 33, township 4 north, range 2 west in Garvin county, Oklahoma. Both mineral deeds were duly recorded and each deed grants a perpetual right as to the grantee to produce oil, gas and other minerals in and under the land described. Neither deed contains any exception or reservation of the full mineral interest conveyed.

Prior to the execution of the mineral deeds and at the solicitation of an agent of defendant, plaintiff signed an application for shares of stock or certificates in the Pan Mutual Royalties, a Trust Estate. After the application was approved by defendant, certificates of stock were issued and delivered to plaintiff, and these certificates specifically referred to the trust agreement. The trust agreement, among other things, provided as follows:

"The object of this organization is to enable parties who desire to invest in oil, gas and mineral properties, by acquiring shares in the Trust, to spread such investments over a very much larger territory than would ordinarily be possible for such investors to do individually, thereby increasing the opportunity or likelihood of the investor becoming interested in properties that are or may become valuable for the production of such minerals and of receiving revenue and profits from same."

The certificate issued to plaintiff by defendant certified that:

"This Certifies That R. E. Roller is the owner and holder of 300 shares, fully paid and non-assessable, of a total of 10,000,000 authorized shares of beneficial interests in Pan Mutual Royalties, subject to the written agreement and declaration of trust under and by virtue of which said organization was created, made by B. H. Rogers, Thomas E. Nix and W. G. Rogers, Trustees, dated May 27, 1931, and recorded in Book 23 Page 208 of the records of the office of the County Clerk, Pittsburg County, Oklahoma, on the 20th day of June 1931. All of the terms of said agreement and declaration of trust are, by reference, made part hereof and expressly assented to."

Sixteen years after the execution of the mineral deeds oil was discovered in the vicinity of plaintiff's land. Plaintiff's mineral rights in 1932 were valued at $5 to $10 per acre; they were valued at $1,000 to $1,800 per acre after oil was discovered on his land. A well was drilled on plaintiff's land in section 36, in December, 1948, and another well had been completed before the cause came on for trial.

In 1945 plaintiff visited the office of the defendant trust to make inquiry as to its financial status. He did not make any contention then that his mineral deeds expired within the fifteen year limit. A trustee of the defendant trust with whom plaintiff conversed stated that plaintiff made no claim that he was entitled to a return of the property if it was not producing within fifteen years from the execution of the mineral deeds.

There is no controversy that the mineral deeds executed by plaintiff were perpetual mineral deeds. The plaintiff himself so testified. Moreover, in 1934, he sold 40 acres of the 60-acre tract and furnished an abstract of title which reflected the mineral deeds in question.

Several interveners holding jointly approximately 15,000 shares of the defendant trust testified that in 1932 they executed mineral deeds in perpetuity to defendant in exchange for certificates or shares in the trust. That their mineral rights were then valued at $5 per acre, but that at the date of trial these rights were worth $1,500 per acre.

We epitomize the court's findings of fact:

(1) Plaintiff seeks to recover mineral rights which he exchanged for shares of beneficial interests in a "business trust," more than fifteen years prior to the commencement of this action.

(2) Pan Mutual Royalties, a "business trust" was organized in 1931 and authorized to pool mineral rights by exchanging its shares for mineral deeds.

(3) On August 8, 1931, plaintiff, by mineral deed conveyed an undivided three-eighths interest in oil, gas and minerals in the 160 acres described in perpetuity with covenants of warranty. The trustees of the defendant accepted the deed and issued plaintiff a certificate for 600 shares of beneficial interest in the trust.

(4) On February 10, 1932, in consideration of plaintiff's mineral deed conveying an undivided one-half interest in oil, gas and other minerals to defendant in 60 acres of land, defendant issued to plaintiff certificate for 300 shares of beneficial interest in the trust.

(5) The application of plaintiff for stock and the stock certificate received by him both refer to the trust agreement and were made a part thereof and expressly assented to.

(6) Plaintiff knew he was pooling his acreage with the other landowners and that if any acreage pooled should produce all shareholders would participate proportionately in the profits.

(7) Plaintiff knew the mineral deeds were perpetual mineral deeds acquired in the pooling agreement. He retained his stock certificate for more than fifteen years and did not offer to rescind prior to the filing of his present action.

(8) That the mineral rights conveyed by plaintiff and interveners in 1931 and 1932 were valued at $5.00 to $10.00 per acre, but by reason of the discovery of oil are now worth from $1,000.00 to $1,800.00 per acre, and that interveners' rights would suffer if plaintiff's land was withdrawn from the pool.

(9) The defendant has complied with the terms and conditions of the trust agreement, the trust is solvent and holds approximately 45,000 acres of perpetual mineral rights in which 300 landowners have beneficial interest under the trust.

The judgment rendered in all its essential elements supports the court's findings of fact. Judgment was entered against plaintiff and in favor of the defendant and interveners.

This being an equitable action we must indulge in the presumption that the findings of fact and conclusions of law are correct. We will not set aside such findings or conclusions of law thereon unless the judgment is against the clear weight of the evidence. Atteberry v. Aulick, 204 Okla. 540, 231 P. 2d 993, Bartlett v. Lashley, 204 Okla. 299, 229 P. 2d 185, and Davenport v. Board of Education, 204 Okla. 356, 230 P. 2d 271.

We conclude that the judgment is supported by the clear weight of the evidence and should be affirmed.

HALLEY, V. C. J., and WELCH, CORN, GIBSON, DAVISON, and JOHNSON, JJ., concur.